FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 06/24/2026

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF COLUMBIA**

| | |
|---|---|
| KOH HOLDINGS INC.,<br>a Delaware corporation, | )<br>)<br>) |
| Plaintiff, | )   Index No.:<br>) |
| v. | )   **COMPLAINT**<br>) |
| POWDER OPS LLC,<br>a Utah limited liability company, | )<br>)<br>) |
| Defendant. | ) |

Plaintiff, KOH HOLDINGS INC. ("*KOH Holdings*"), by and through its attorneys, Devine & Bruno, LLP, as and for its Complaint against Defendant POWDER OPS LLC ("*Powder Ops*"), alleges as follows:

## BACKGROUND

1.    This is a commercial action arising from Powder Ops' manufacture and sale to KOH Holdings of defective, non-conforming packaged oatmeal products intended for retail sale to the public under KOH Holdings' brand.

2.    KOH Holdings retained Powder Ops to manufacture approximately 50,000 units of KOH Holdings' Meal One instant oatmeal product pursuant to purchase order KOH_12262024.

3.    Powder Ops agreed to manufacture the products in accordance with KOH Holdings' recipes, ingredient specifications, quality requirements, packaging requirements, and applicable food manufacturing standards.

4.    Powder Ops delivered, and KOH Holdings paid for, products that were later discovered to be defective, bitter, rancid, spoiled, and non-conforming.

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904

NYSCEF DOC. NO. 1                                                        RECEIVED NYSCEF: 06/24/2026

5. The defect was latent and was not reasonably discoverable by KOH Holdings at the time of delivery because the products were prepackaged, shelf-stable food products, Powder Ops had supplied Certificates of Analysis, and the organoleptic defects manifested after distribution and consumer use.

6. After consumers complained that the products tasted "terrible," "bitter," and "rancid," KOH Holdings notified Powder Ops of the non-conformity, requested batch records, underlying test results, and raw-material COAs, and quarantined remaining inventory.

7. Powder Ops' breaches caused KOH Holdings damages believed to exceed $1,900,000, including product losses, refunds, credits, chargebacks, investigation and storage costs, lost sales and profits, business interruption, and harm to KOH Holdings' brand goodwill.

## PARTIES

8. Plaintiff KOH Holdings is a Delaware corporation with its principal place of business at 34 Allen Street, Hudson, NY 12534.

9. .KOH Holdings operates under the trade name Kreatures of Habit and sells prepackaged flavored oatmeal to the public.

10. Defendant Powder Ops is a Utah limited liability company with its principal place of business at 281 E. 1600 N. Vineyard, UT 84059.

11. Powder Ops is a food manufacturer.

12. At all relevant times, Powder Ops held itself out as possessing the skill, experience, facilities, quality systems, and manufacturing capability necessary to manufacture KOH Holdings' packaged oatmeal products for retail consumer sale.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this commercial dispute..

2

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/24/2026

14. This Court has personal jurisdiction over Powder Ops pursuant to CPLR 302 because Powder Ops transacted business with KOH Holdings in New York and contracted to supply goods to a New York-based company.

15. Powder Ops knew that KOH Holdings was headquartered in New York and that the products would be sold under KOH Holdings' consumer brand through KOH Holdings' distribution network.

16. Powder Ops communicated with KOH Holdings in New York regarding the purchase order, specifications, invoices, production, delivery, quality documentation, and product complaints.

17. Powder Ops issued invoices to KOH Holdings, accepted payment from KOH Holdings, and shipped or caused the shipment of the products into KOH Holdings' distribution network for resale.

18. Venue is proper in this county under CPLR § 503 because KOH Holdings principal place of business is located in Columbia County, New York, and a substantial part of the events or omissions giving rise to the claims occurred in or affected KOH Holdings in this county.

## FACTUAL ALLEGATIONS

19. Before December 26, 2024, KOH Holdings and Powder Ops had a commercial relationship under which Powder Ops manufactured KOH Holdings' packaged flavored instant oatmeal products for retail sale.

20. The product at issue is KOH Holdings' HERO / Meal One packaged flavored instant oatmeal product, including the Peanut Butter Banana and Apple Cinnamon flavors. (the "*Product*").

3

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 06/24/2026

21.    On or about December 26, 2024, KOH Holdings and Powder Ops entered into a purchase order issued agreement for Powder Ops to provide KOH Holdings with 50,000 units of Product pursuant to purchase order KOH_12262024.

22.    Purchase order KOH_12262024 identified the product, quantity, pricing, and manufacturing requirements, and incorporated or was accompanied by KOH Holdings' specifications and requirements.

23.    Powder Ops accepted purchase order KOH_12262024 by confirming the order, commencing manufacture, producing the products, issuing invoices, and delivering or causing delivery of the products. The parties' course of dealing included KOH Holdings supplying product formulas, ingredient requirements, packaging requirements, quality expectations, and finished-product specifications to Powder Ops.

24.    KOH Holdings' specifications required the products to conform to the approved recipe and formula for each flavor.

25.    KOH Holdings' specifications required the products to be wholesome, palatable, not rancid, not bitter, not spoiled, and fit for ordinary consumer consumption.

26.    KOH Holdings' specifications required the products to have acceptable aroma, flavor, appearance, and texture consistent with previously approved samples and prior production runs.

27.    KOH Holdings' specifications required Powder Ops to manufacture, package, test, and release the products in compliance with applicable food manufacturing laws, regulations, and industry standards, including applicable current good manufacturing practices.

4

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904
NYSCEF DOC. NO. 1                                              RECEIVED NYSCEF: 06/24/2026

28.    KOH Holdings relied on Powder Ops's skill, judgment, facilities, quality-control systems, and experience as a food manufacturer to manufacture products suitable for retail sale to consumers.

29.    Powder Ops knew that KOH Holdings was not purchasing the products for internal use, but for resale to the public under KOH Holdings' brand.

30.    Powder Ops knew that any non-conforming flavor, aroma, texture, spoilage, rancidity, or quality defect would foreseeably cause customer complaints, refunds, lost sales, inventory losses, business interruption, and harm to KOH Holdings' goodwill.

31.    On or about April 9, 2025, Powder Ops issued invoice 1096 to KOH Holdings for 25,605 units of product.

32.    KOH Holdings paid invoice 1096 in full.

33.    On or about May 6, 2025, Powder Ops issued invoice 1098 to KOH Holdings for 25,910 units of product.

34.    KOH Holdings paid invoice 1098 in full.

35.    Powder Ops delivered, shipped, or caused delivery of the products into KOH Holdings' distribution network between approximately April and May 2025.

36.    The products were then made available for sale to the public through KOH Holdings' ordinary retail and distribution channels.

37.    At the time Powder Ops tendered the products, Powder Ops represented that the products conformed to KOH Holdings' specifications and were fit for sale and consumption.

38.    Powder Ops also provided Certificates of Analysis and other quality documentation in connection with the products.

5

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/24/2026

39.    Before the complaints at issue, Powder Ops had provided COAs for products that included testing or evaluation for aromatics, flavor, appearance, and texture.

40.    KOH Holdings reasonably relied on Powder Ops's representations, course of dealing, COAs, and quality documentation in accepting and distributing the products.

41.    The defects were latent because the products were sealed, prepackaged, shelf-stable food products, and KOH Holdings could not reasonably detect rancidity, bitterness, spoilage, or deterioration in each unit at the time of delivery.

42.    Beginning in or about July or August 2025, KOH Holdings began receiving customer complaints and negative reviews concerning the products.

43.    Customers specifically complained that the Peanut Butter Banana and Apple Cinnamon flavors tasted "terrible," "bitter," "rancid," or otherwise unfit for consumption.

44.    The complaints involved products manufactured by Powder Ops pursuant to purchase order KOH_12262024.

45.    The complained-of products were within their expected shelf life and should not have tasted rancid, bitter, spoiled, or otherwise defective.

46.    After receiving complaints, KOH Holdings investigated the issue, reviewed available inventory, reviewed customer complaints, and requested additional quality documentation from Powder Ops.

47.    In or about November 2025, KOH Holdings notified Powder Ops that products manufactured under purchase order KOH_12262024 were defective, non-conforming, and the subject of customer complaints.

48.    KOH Holdings' notice identified the nature of the breach, including the products' bitter, rancid, spoiled, or otherwise non-conforming taste.

6

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM   INDEX NO. E012026025904

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 06/24/2026

49. KOH Holdings' notice was provided within a reasonable time after KOH Holdings discovered, or reasonably should have discovered, the latent defect.

50. KOH Holdings requested the time-relevant COAs for the non-conforming production batch or batches.

51. Powder Ops provided COAs for the affected products, but those COAs did not include the same aromatics, flavor, appearance, and texture testing that Powder Ops had previously furnished.

52. KOH Holdings requested the underlying test results, batch records, production records, raw-material COAs, and other quality records necessary to investigate the root cause.

53. Powder Ops refused or failed to provide the requested underlying test results, batch records, and raw-material COAs.

54. Powder Ops' failure to provide the requested records prevented KOH Holdings from fully confirming the source and scope of the defect before litigation.

55. In or about November 2025, KOH Holdings caused remaining unsold non-conforming product to be quarantined by a third-party logistics provider.

56. The quarantined inventory totaled approximately 11,284 units.

57. KOH Holdings quarantined the products to prevent further sale of defective consumer food products and to mitigate damages.

58. The quarantined products have no ordinary resale value as retail food products because they are defective, non-conforming, and not suitable for sale to consumers.

59. KOH Holdings has incurred and continues to incur costs associated with investigation, quarantine, storage, disposition, customer service, customer refunds, credits, chargebacks, replacement product, lost sales, and loss of goodwill.

7

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM
NYSCEF DOC. NO. 1

INDEX NO. E012026025904

RECEIVED NYSCEF: 06/24/2026

60.     KOH Holdings' damages include the purchase price and value of defective units, costs associated with unsold quarantined inventory, costs of handling and storing defective inventory, customer refunds and credits, lost sales, lost profits, business interruption, and reputational harm.

61.     Powder Ops' breaches were a direct, natural, probable, and foreseeable result of its failure to manufacture conforming products.

62.     Powder Ops knew or had reason to know at the time of contracting that KOH Holdings' damages from defective consumer food products would include lost sales, customer complaints, refunds, retailer or distributor issues, and damage to KOH Holdings' brand reputation.

63.     KOH Holdings has performed all conditions precedent to recovery or such conditions have been waived, excused, or prevented by Powder Ops.

64.     KOH Holdings reserves the right to amend this Complaint after discovery to identify additional affected lot codes, batch numbers, raw materials, quality failures, production deviations, and damages.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

65.     KOH Holdings reincorporates the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66.     KOH Holdings and Powder Ops entered into a valid and enforceable contract, including purchase order KOH_12262024, accepted specifications, invoices, course of dealing, and Powder Ops' acceptance and performance.

67.     The contract required Powder Ops to manufacture approximately 50,000 units of KOH Holdings' products in accordance with KOH Holdings' recipes, ingredient requirements, packaging requirements, quality requirements, and applicable food manufacturing standards.

8

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 06/24/2026

68. The contract required Powder Ops to deliver products that were conforming, merchantable, wholesome, palatable, not rancid, not spoiled, and fit for retail sale and consumer consumption.

69. The contract required Powder Ops to provide accurate and complete quality documentation and to manufacture the products in accordance with approved specifications.

70. KOH Holdings performed its contractual obligations by issuing the purchase order, providing specifications, accepting delivery in reliance on Powder Ops' representations and documentation, and paying invoices 1096 and 1098 in full.

71. Powder Ops breached the contract by manufacturing, tendering, and selling products that were bitter, rancid, spoiled, defective, and non-conforming.

72. Powder Ops breached the contract by failing to manufacture the products in accordance with KOH Holdings' specifications, approved formulas, and quality requirements.

73. Powder Ops breached the contract by failing to provide complete and adequate quality documentation, including underlying test results, batch records, and raw-material COAs after KOH Holdings notified Powder Ops of the defect.

74. As a direct and proximate result of Powder Ops' breach, KOH Holdings has been damaged in an amount to be determined at trial, but believed to exceed $1,900,000.

## SECOND CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY UCC § 2-313

75. KOH Holdings repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

76. Powder Ops made affirmations of fact, promises, and descriptions concerning the products.

9

77.     Powder Ops expressly warranted that the products would conform to KOH Holdings' formulas, specifications, ingredient requirements, packaging requirements, quality requirements, and approved product attributes.

78.     Powder Ops expressly warranted that the products would be manufactured as KOH Holdings' Meal One products and would be suitable for retail sale to the public.

79.     Powder Ops expressly warranted, through its acceptance of purchase order KOH_12262024, course of dealing, invoices, COAs, and quality documentation, that the products conformed to applicable specifications and quality requirements.

80.     Powder Ops' affirmations, promises, descriptions, COAs, and quality representations became part of the basis of the bargain.

81.     KOH Holdings relied on those express warranties in purchasing, accepting, paying for, and distributing the products.

82.     The products did not conform to Powder Ops' express warranties because they were bitter, rancid, spoiled, defective, non-conforming, and not consistent with KOH Holdings' specifications or approved product attributes.

83.     KOH Holdings notified Powder Ops of the breach within a reasonable time after discovering the latent defect.

84.     As a direct and proximate result of Powder Ops' breach of express warranty, KOH Holdings has been damaged in an amount to be determined at trial, but believed to exceed $1,900,000.

### THIRD CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability — UCC § 2-314**

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM    INDEX NO. E012026025904
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 06/24/2026

85.    KOH Holdings repeats and realleges paragraphs 1 through 84 as if fully set forth herein.

86.    Powder Ops is a merchant with respect to packaged food products of the kind at issue.

87.    A warranty of merchantability was implied in Powder Ops' sale of the products to KOH Holdings.

88.    To be merchantable, the products were required to pass without objection in the trade under the contract description, be of fair average quality, be fit for the ordinary purposes for which such goods are used, be adequately packaged and labeled as required, and conform to affirmations made on the container or label.

89.    The ordinary purpose of the products was retail sale and consumer consumption as flavored instant oatmeal.

90.    The products were not merchantable at the time of sale because they were bitter, rancid, spoiled, defective, non-conforming, and unfit for ordinary consumer consumption.

91.    The products would not pass without objection in the trade as packaged flavored instant oatmeal intended for retail sale.

92.    The products were not of fair average quality within the contract description.

93.    The products did not conform to the promises, affirmations, and quality expectations associated with KOH Holdings' branded consumer food products.

94.    KOH Holdings notified Powder Ops of the breach within a reasonable time after discovering the latent defect.

11

INDEX NO. E012026025904
NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 06/24/2026

95.    As a direct and proximate result of Powder Ops' breach of the implied warranty of merchantability, KOH Holdings has been damaged in an amount to be determined at trial, but believed to exceed $1,900,000.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose — UCC § 2-315

96.    KOH Holdings repeats and realleges paragraphs 1 through 95 as if fully set forth herein.

97.    At the time of contracting, Powder Ops knew or had reason to know the particular purpose for which the products were required.

98.    The particular purpose was to manufacture KOH Holdings' branded packaged flavored instant oatmeal products in accordance with KOH Holdings' specifications for retail sale to the public and consumer consumption.

99.    Powder Ops knew or had reason to know that KOH Holdings relied on Powder Ops' skill, judgment, manufacturing capability, food safety systems, quality-control systems, and expertise to produce suitable products.

100.    KOH Holdings in fact relied on Powder Ops' skill and judgment to manufacture products suitable for that particular purpose.

101.    Powder Ops breached the implied warranty of fitness for a particular purpose because the products were bitter, rancid, spoiled, defective, non-conforming, and not fit for retail sale or consumer consumption as KOH Holdings' branded oatmeal products.

102.    KOH Holdings notified Powder Ops of the breach within a reasonable time after discovering the latent defect.

12

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM   INDEX NO. E012026025904

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 06/24/2026

103.    As a direct and proximate result of Powder Ops' breach of the implied warranty of fitness for a particular purpose, KOH Holdings has been damaged in an amount to be determined at trial, but believed to exceed $1,900,000.

## FIFTH CAUSE OF ACTION

### Buyer's Damages for Accepted Non-Conforming Goods — UCC §§ 2-714 and 2-715

104.    KOH Holdings repeats and realleges paragraphs 1 through 103 as if fully set forth herein.

105.    KOH Holdings accepted products from Powder Ops in reliance on Powder Ops' representations, course of dealing, invoices, COAs, and quality documentation.

106.    The non-conformities were latent and were discovered only after products had been distributed and consumers complained.

107.    KOH Holdings notified Powder Ops of the breach within a reasonable time after discovery.

108.    KOH Holdings is entitled to recover damages for the non-conforming tender, including the loss resulting in the ordinary course of events from Powder Ops' breach.

109.    The value of the products as accepted was materially less than the value the products would have had if they had been as warranted.

110.    The products' defects caused direct damages, incidental damages, and consequential damages.

111.    KOH Holdings' incidental damages include expenses reasonably incurred in inspection, investigation, handling, storage, quarantine, care, custody, and disposition of defective goods.

13

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM   INDEX NO. E012026025904
NYSCEF DOC. NO. 1                                              RECEIVED NYSCEF: 06/24/2026

112.   KOH Holdings' consequential damages include losses resulting from KOH Holdings' general and particular requirements and needs of which Powder Ops had reason to know at the time of contracting, including lost sales, lost profits, customer refunds and credits, business interruption, and harm to goodwill.

113.   KOH Holdings could not reasonably have prevented all such damages by cover or otherwise because the products had already entered distribution before the latent defect was discovered.

114.   As a direct and proximate result of Powder Ops' breaches and non-conforming tender, KOH Holdings has been damaged in an amount to be determined at trial, but believed to exceed $1,900,000.

*THIS SPACE INTENTIONALLY LEFT BLANK*

14

FILED: COLUMBIA COUNTY CLERK 06/24/2026 08:31 AM
NYSCEF DOC. NO. 1

INDEX NO. E012026025904

RECEIVED NYSCEF: 06/24/2026

WHEREFORE, Plaintiff KOH Holdings Inc. respectfully demands judgment against Defendant Powder Ops as follows:

A. Awarding compensatory damages in an amount to be determined at trial, but believed to exceed $1,900,000;

B. Awarding direct, incidental, and consequential damages recoverable under the UCC and New York law;

C. Awarding pre-judgment and post-judgment interest to the fullest extent permitted by law;

D. Awarding costs and disbursements of this action;

E. Awarding attorneys' fees only to the extent recoverable under contract, statute, court rule, or other applicable law; and

F. Awarding such other and further relief as the Court deems just and proper.

Dated: June 24, 2026

Respectfully submitted,

DEVINE & BRUNO, LLP

By: _____
Michael N. Bruno, Esq.
52 Corporate Circle Ste 207
Albany New York 12203
Telephone: 518-464-0640
Email: mbruno@devinebruno.com

15